IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DATACARRIER S.A.,

                        Plaintiff,                                  OPINION & ORDER

        v.
                                                                        16-cv-122-jdp
WOCCU SERVICES GROUP, INC.,

                        Defendant.

---

This is a copyright infringement case involving computer software used to run ATMs, which has been put to use primarily in South America. Before the court is a motion to dismiss that raises questions about the limits of protection afforded under the United States Copyright Act. The first limit is territorial: defendant WOCCU Services Group, Inc. (WSG) contends that it cannot be liable for authorizing, from the United States, infringement that itself occurred wholly outside the United States. The second limit concerns protectable subject matter: WSG contends that it does not infringe because its software copies no more than unprotectable ideas, processes, and functions from plaintiff Datacarrier S.A.'s software. Finally, WSG contends that the amended complaint fails to plausibly allege any direct infringement in the United States. The bottom line is that WSG contends that the amended complaint does not plausibly allege any copyright infringement that would be actionable under the Copyright Act.

The court agrees with WSG on the territoriality issue. All agree that infringement occurring wholly outside the United States is not actionable under the Copyright Act. It is an open question in the Seventh Circuit whether merely authorizing such extraterritorial infringement is itself an actionable act of domestic infringement. The weight of better

reasoned authority, including chiefly *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994), holds that it is not. A minority of authorities leans the other way, but the *Subafilms* approach is more consistent with the fundamentally territorial approach to international copyright law. National independence is harmonized through treaties, but copyright enforcement is still, most fundamentally, a nation-by-nation affair. To decide otherwise would expand the purview of U.S. courts, and doing so would introduce thorny conflict-of-laws problems.

The court agrees with Datacarrier on the subject matter issue, at least at the pleading stage. WSG is no doubt correct that many aspects of Datacarrier's software are ideas and functions, and in that sense Datacarrier is entitled only to thin copyright protection. But even a thin copyright protects against literal copying, and the amended complaint alleges at least some of that. WSG may ultimately have a successful defense on the merits, but at this point in the case the amended complaint adequately alleges copying of protected elements.

The final issue is whether the amended complaint adequately alleges acts of direct infringement in the United States. Datacarrier alleges that WSG infringes by testing the allegedly infringing software in the United States and by maintaining an executable copy of the software in the United States to provide support to its users in South America. Datacarrier's theory is predicated on the notion that an infringing copy is made whenever the infringing software is run on a computer, a notion WSG does not challenge. The court concludes that Datacarrier has adequately alleged domestic acts of direct infringement.

ALLEGATIONS OF FACT

The court draws the following facts from the amended complaint, Dkt. 28, construing the allegations "in the light most favorable to [Datacarrier], accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff Datacarrier S.A. is an Ecuadorian software company. The piece of software at issue in this case—the TID Program—processes financial transactions and manages ATM systems.

Defendant WOCCU Services Group, Inc. (WSG) is a Wisconsin corporation that provides financial products and services to credit unions outside of the United States. WSG holds ownership interests in several Latin American and South American companies that provide services to banking and credit unions, which include support for ATM networks.

Datacarrier licensed its software, including the TID Program, to Servicios Tecnologicos de Guatemala S.A. (ServiTech). ServiTech, in turn, licensed the software to WSG. WSG authorized its affiliates to use the Datacarrier software, including the TID Program, in connection with ATMs operated in South America and Latin America.

At some point, WSG grew dissatisfied with the Datacarrier software. Programmers at WSG's Peruvian affiliate, which we shorten to "Kuskanet," began developing an alternative ATM software, called Entura. WSG operated and evaluated Entura in Wisconsin and ultimately decided to replace Datacarrier's TID Program with Entura. Kuskanet transferred Entura to WSG, and WSG licensed the software to its South American and Latin American affiliates.

3

WSG's licensing agreement with ServiTech, and thus its rights to the Datacarrier TID Program, terminated on June 30, 2013. Datacarrier registered its copyright to the TID Program in the United States effective December 15, 2014.

Apparently in response to a complaint from Datacarrier, the Ecuadorian government investigated similarities between the TID Program and Entura. The report of the government experts is attached to the amended complaint. Although the precise purpose and findings of the report are not entirely clear, the report concludes that there are similarities between the TID Program and Entura. The programs use some of the same standards and specifications, and Entura copied some of the variable names, code, and databases in the TID Program.

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338.

MOTION TO DISMISS

The court must address a procedural issue before turning to WSG's main arguments. WSG proposes that allegations of extraterritorial infringement raise questions about the court's jurisdiction, and thus a motion to dismiss on that ground is a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), rather than a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). It is true, as WSG says, that some courts have determined that territoriality issues raise questions of subject matter jurisdiction. *See, e.g.*, *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004). Other courts have concluded that territoriality is not jurisdictional, but simply an element of a copyright claim. *See, e.g.*, *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008). This is an open question in the Seventh Circuit. But many cases, notably *Subafilms*, do not expressly decide

4

whether the question is jurisdictional, which raises the question of whether there is any practical difference between the two perspectives.

WSG seems to think that the procedural vehicle matters because, when challenged, jurisdictional facts cannot be established on information and belief. Dkt. 36, at 13. If there were fact-based doubts about subject matter jurisdiction, the court would take evidence and even hold a hearing to resolve the issue.

But that is not what is happening here. Datacarrier filed a complaint that alleged that WSG authorized infringement in a foreign country. WSG moved to dismiss on the ground that extraterritorial infringement is not actionable under the Copyright Act. Datacarrier then amended its complaint, adding allegations—on information and belief—that WSG had also committed *domestic* acts of infringement by running the allegedly infringing Entura software in the United States. WSG now attacks the domestic infringement allegations for failure to state a claim upon which relief can be granted; but Datacarrier's allegations of domestic infringement do not raise any issue that goes to the jurisdiction of the court.

In fact, the court is not persuaded that even the extraterritoriality issue raises a jurisdictional question. To the extent it makes a difference, the court would follow the Federal Circuit's thorough analysis in *Litecubes*. WSG's motion, therefore, is based on the failure to state a claim, to be decided under the familiar standards of Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency. To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

5

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

## A. Domestic authorization of foreign infringement

The Copyright Act does not apply extraterritorially. *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1376 (2013) (Ginsburg, J., dissenting) (citing *United Dictionary Co. v. G & C Merriam Co.*, 208 U.S. 260, 264 (1908)); *see also* 7 William F. Patry, Patry on Copyright § 25:86 (2016 ed.) ("*Every* court to have examined the issue has held that Congress did not intend the Copyright Act to be applied extraterritorially, beginning with the Supreme Court in 1908."). All agree that acts of infringement occurring entirely outside the United States are not actionable under the Copyright Act. Thus, to survive this motion to dismiss, Datacarrier must have alleged some infringing act that took place *in the United States*.

Datacarrier's main allegation in this case is that WSG authorized—from the United States—acts of direct infringement that took place in foreign countries. In other words, WSG committed acts that would constitute contributory infringement in the United States, although the resulting direct infringement occurred outside the United States. Whether domestic authorization of foreign infringement is actionable under the Copyright Act is an open question for this court: neither the Seventh Circuit nor the Supreme Court has decided it.

The leading case on the subject holds that it is not actionable. In *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, the Ninth Circuit, sitting en banc, confronted whether "a claim for infringement can be brought under the Copyright Act when the assertedly

infringing conduct consists solely of the authorization within the territorial boundaries of the United States of acts that occur entirely abroad." 24 F.3d 1088, 1089 (9th Cir. 1994) (internal citation omitted). *Subafilms* involved domestic authorization of international distribution of a copyrighted film. The Ninth Circuit held that because a party would not be liable for authorizing an act that itself does not constitute infringement under the Copyright Act, and because "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act," then allegations that a party authorized from the United States allegedly infringing acts that took place abroad do not state an actionable claim under the Copyright Act. *Id.* at 1090. Put simply, if infringement that takes place entirely outside of the United States is not actionable, then neither is authorization of that infringement.

A few district courts have gone the other way, following the approach taken in *Curb v. MCA Records, Inc.*, 898 F. Supp. 586 (M.D. Tenn. 1995), which involved a dispute over the foreign distribution of recordings of musical performances by the Judds. The *Curb* court concluded that *Subafilms* had relied on a "peculiar interpretation" of 17 U.S.C. § 106 and summarily stated that the interpretation "appears contrary both to well-reasoned precedent, statutory text, and legislative history." *Id.* at 594. But the court's analysis is conclusory, and it appears premised on the idea that domestic authors should enjoy maximum protection against infringement anywhere in the world. *Curb* contends that *Subafilms* ignored the "economic reality" of today's global community. *Id.* at 595. "Under [*Subafilms*'s] view, a phone call to Nebraska results in liability; the same phone call to France results in riches." *Id.* *Curb* ultimately held that "domestic violation of the authorization right is an infringement,

sanctionable under the Copyright act, whenever the authorizee has committed an act that would violate the copyright owner's § 106 rights." *Id.*[1]

This court will follow *Subafilms*, like the majority of courts to consider the issue.[2] To be clear, the *Curb* result is neither irrational nor demonstrably incorrect. But the *Subafilms* approach fits most naturally with the statutory language and with the generally territorial approach to international copyright protection.

The court begins with the relevant statutory text. Section 106 identifies six exclusive rights that belong to a copyright's owner. *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) ("The Act entitles a copyright's owner to a bundle of six different exclusive rights."). A copyright owner has the exclusive right to do *and to authorize* the six

---

[1] A case from the District of New Jersey adopted *Curb*'s reasoning. *See Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468 (D.N.J. 1998). The case considered *Subafilms* and *Curb* and ultimately adopted the holding and reasoning set forth in the latter. *Id.* at 476. The court appreciated *Curb*'s policy observations:

> The purpose behind the Copyright Act is to protect a copyright owner's right to be free from infringement in the United States. To allow an entity to curtail this right by merely directing its foreign agent to do its "dirty work" would be to hinder the deterrent effect of the statute and to thwart its underlying purpose.

*Id.* at 477.

[2] *See Seals v. Compendia Media Grp.*, No. 02-cv-0920, 2003 WL 731369, at *4 (N.D. Ill. Feb. 28, 2003). *See also Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 127-28 (D.D.C. 2011) ("[U]nder the theories of contributory and vicarious liability, those accused of such liability are not, without the linked third-party infringement occurring inside the United States, violating United States copyright law. Indeed, while a line of older cases held that courts have subject matter jurisdiction under U.S. copyright laws when a defendant 'authorizes' another to commit infringing acts even if such acts are committed abroad, '[t]his line of cases has been subsequently repudiated, and it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law.'" (quoting *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000))).

enumerated acts. Anyone who violates those exclusive rights infringes the copyright. 17 U.S.C. § 501(a). The court is not persuaded that "to authorize" is yet another exclusive right; if it were, it would be possible for a party to be liable for copyright infringement for *authorizing* infringing copying even if no actual copying took place. The better interpretation, as discussed in *Subafilms*, is that authorizing infringing activity is a form of contributory infringement. *See* 7 Patry on Copyright § 25:87 ("The verb 'to do' refers to direct infringement, e.g., consumer personally makes an illegal copy of a rented videocassette. The verb 'to authorize' refers to contributory acts; there is no separate authorization right."). But there can be no liability for contributory infringement without direct infringement. Accordingly, there would be no liability for contributory infringement if the underlying "infringement" is not actionable under the Copyright Act.

Such an approach is also consistent with the approach to international copyright protection. Generally, copyrights are territorial, and a copyright owner would enforce its rights against infringement in the territory in which the infringement occurs—not from the home country of the copyright owner or the infringer. This territoriality is moderated somewhat by international treaties, which harmonize territorial protections with an interest in international copyright protection, but only to a limited degree. The cornerstone of these treaties is called "national" treatment, which means that each signatory nation will accord to foreign works the same treatment that domestic works would receive. Copyright protection will vary from nation to nation, but within each nation, foreign and domestic works will stand on equal footing.

The *Curb* approach could produce complicated choice-of-law problems, because different aspects of the same course of infringement would be governed by different law.

Under *Curb*, WSG's conduct (i.e., its authorization from the United States) would be actionable here if its affiliates' actions in Peru violated U.S. copyright law. But imagine, hypothetically, that unlike the United States, Peru does not extend copyright protection to computer software. Would WSG be liable in the United States for authorizing activity that was lawful in Peru? This example might pose the problem in unusually stark terms, but some version of this problem would be in play whenever a contributory infringement claim were brought in a United States court when the associated act of direct infringement takes place in a foreign nation.

The court will adopt the *Subafilms* approach. Datacarrier's allegation that WSG authorized foreign infringement is not actionable under the Copyright Act. Thus, any claim that WSG infringed Datacarrier's copyright based on the authorization of foreign acts of direct infringement are dismissed for failure to state a claim.

## B.  Direct infringement in the United States

Datacarrier's amended complaint adds allegations of domestic infringement. Specifically, Datacarrier alleges that WSG infringed its copyright to the TID Program by testing Entura in the United States and by offering technical support for Entura from the United States. Essentially, Datacarrier contends that WSG has infringed its copyright by running Entura on servers in the United States, albeit for limited purposes.

To state a claim for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

The parties apparently agree that running software on a server constitutes copying. "The language of the Copyright Act, case law, and common sense support the proposition

10

that the installation of software onto a computer results in 'copying' within the meaning of the Copyright Act." *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 100 (D.C. Cir. 1998). "[I]f someone loads validly copyrighted software onto his or her own computer without the owner's permission, and then uses the software for the principal purposes for which it was designed, there can be no real doubt that the protected elements of the software have been copied and the copyright infringed." *Id.*; *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993) ("[I]t is generally accepted that the loading of software into a computer constitutes the creation of a copy under the Copyright Act.").

WSG offers two reasons to dismiss Datacarrier's claims of domestic infringement. First, as discussed above, WSG contends that the allegations of domestic infringement are inadequately supported, because they are made on information and belief. The court rejects this misplaced jurisdictional argument for reasons explained above. Datacarrier alleges that the Entura software infringes the TID Program copyright, and that WSG has violated its right of reproduction by copying the infringing Entura program in the course of running it on servers in the United States. Because whether WSG has, in fact, run Entura on its servers in the United States is a fact that is uniquely in WSG's control, an allegation on information and belief is acceptable. Datacarrier has alleged additional background facts that show why it is plausible to assume that WSG has run Entura on servers in the United States. WSG may well have a defense on the merits, but it offers no reason to dismiss these allegations for failure to state a claim.

And WSG's second reason to dismiss the domestic infringement claims is a defense on the merits. WSG contends that it has copied only unprotectable ideas, processes, and functions. WSG is correct that a computer program embodies ideas, processes, and functions

11

that are themselves not protectable, because they are not "expression." *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354-57 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2887 (2015). The point is buttressed by the *Compendium of U.S. Copyright Office Practices, Third Edition*, which makes clear for those working in the Copyright Office that the protected aspects of computer software do not include the purely functional aspects. WSG also makes a fair point about the expert report attached to the amended complaint: that report apparently catalogs similarities between the TID Program and Entura without regard to whether those similarities relate to any protected aspect of the TID Program. Datacarrier alleges that the expert report was part of a criminal investigation into potential copyright infringement. But the purpose of the report, the standards that it applies, and the conclusions that it reaches are far from clear.

Nevertheless, WSG has not shown that the amended complaint fails to state a claim for domestic infringement. Copyright protection in computer software is limited in important ways, but the TID Program was granted a registration, which raises a presumption that the copyright is valid. The Ecuadorian expert report demonstrates numerous points of similarity between the TID Program and Entura, including some incidents of literal copying of source code and databases. The court cannot at this point determine that these similarities are limited to non-protected elements or that Datacarrier's infringement claim fails as a matter of law. This is simply not a case where the court can lay the two works side-by-side and make the determination of substantial similarity of protectable aspects as a matter of law. *Cf. Hobbs v. John*, 722 F.3d 1089, 1093 (7th Cir. 2013), *holding modified by Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755 (7th Cir. 2016).

Datacarrier has adequately alleged copying of original elements. "The Court of Appeals for the Seventh Circuit has held that complaints for copyright infringement are

12

sufficient when they allege present copyright ownership by the plaintiff, registration in compliance with the applicable statute and infringement by the defendant." *Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 677 (W.D. Wis. 2009) (citing *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993)). Datacarrier has alleged present copyright ownership, registration, and, as discussed above, copying by WSG. For purposes of Rule 12(b)(6), Datacarrier has plausibly alleged a claim for copyright infringement.

## MOTION TO STRIKE

WSG also moves to strike the Ecuadorian expert report, and its translation, from the pleadings. Dkt. 6. Rule 12(f) permits a court to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision to strike is discretionary. *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 904 (E.D. Wis. 2005) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992)). Motions to strike are generally disfavored because they delay proceedings. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

As explained above, the attachments are not very clear or particularly helpful, but they do provide a catalog of similarities between the copyrighted work and the accused work. The reports are understandably somewhat embarrassing to WSG, but striking the reports would not alleviate that concern because the worst of the allegations are in the amended complaint itself, too. Datacarrier is entitled to present its case as it sees fit, and the court will deny the motion to strike.

ORDER

IT IS ORDERED that:

1.  Defendant WOCCU Services Group, Inc.'s motion to dismiss, Dkt. 35, is GRANTED in part and DENIED in part, as set forth above.

2.  Defendant's motion to strike, Dkt. 5, is DENIED.

Entered November 22, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14